## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SIERRA CLUB, *et al.*, | |
| Plaintiffs, | |
| vs. | No. 8:25-cv-01627-DLB |
| NATIONAL MARINE FISHERIES SERVICE, *et al.*, | |
| Defendants. | |
| AMERICAN PETROLEUM INSTITUTE, *et al.*, | |
| Intervenor-Defendants. | |

## <u>INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE</u>

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

TABLE OF EXHIBITS TO DECLARATION ............................................................................ iii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 3

LEGAL STANDARD .................................................................................................................. 5

ARGUMENT ............................................................................................................................... 6

    I.      Venue Is Proper in the Western District of Louisiana ................................................... 7

    II.    The Interest of Justice Favors Transfer to the Western District of Louisiana .............. 8

    III.   No Other Factor Counsels Against Transfer ............................................................... 12

CONCLUSION ........................................................................................................................... 17

# TABLE OF AUTHORITIES

Page

CASES:

*Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*,
   20 F. Supp. 2d (E.D. Va. 1998) ...........................................................14

*Alaska Wilderness League v. Jewell*,
   99 F. Supp. 3d 112 (D.D.C. 2015).......................................................10

*Arizona & New Mexico Coal. of Cntys. for Econ. Growth v. United States Fish &*
   *Wildlife Serv.*,
   No. 15-cv-00125, 2015 WL 9917341 (D.N.M. Apr. 23, 2015)..........................................9, 16

*Capella Photonics, Inc. v. Ciena Corp.*,
   No. 20-cv-702, 2020 WL 7043848 (D. Md. Dec. 1, 2020) ...................................12

*Capitol Payment Sys., Inc. v. Di Donato*,
   No. 16-cv-882, 2017 WL 2242678 (D. Md. May 23, 2017)...................................16

*Choice Hotels Int'l, Inc. v. Jai Sai Baba LLC*,
   No. 23-cv-146, 2023 WL 5509211 (D. Md. Aug. 25, 2023)...........................................14, 16

*Continental Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960)................................................................................6, 8

*Cross v. Fleet Rsrv. Ass'n Pension Plan*,
   383 F. Supp. 2d 852 (D. Md. 2005) ........................................................5

*Elderberry of Weber City, LLC v. Living Centers-Se., Inc.*,
   No. 12-cv-00052, 2013 WL 1164835 (W.D. Va. Mar. 20, 2013) ..........................15

*Greene v. National Head Start Ass'n*,
   610 F. Supp. 2d 72 (D.D.C. 2009) ........................................................6, 11

*Gulf Restoration Network v. Jewell*,
   87 F. Supp. 3d 303 (D.D.C. 2015) ........................................................13

*Hengle v. Curry*,
   No. 18-cv-100, 2018 WL 3016289 (E.D. Va. June 15, 2018) ..................................9

*Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*,
   358 F. Supp. 3d 1 (D.D.C. 2019) ........................................................13

*National Lab. Rels. Bd. Pro. Ass'n v. Federal Serv. Impasses Panel*,
   No. 20-cv-00078, 2020 WL 1638410 (D. Md. Apr. 2, 2020)........................................5, 6, 8, 9

**TABLE OF AUTHORITIES—Continued**

Page

*Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*,
264 F. Supp. 2d 357 (W.D.N.C. 2003) ...................................................................15

*Oceana, Inc. v. Pritzker*,
58 F. Supp. 3d 2 (D.D.C. 2013) .............................................................................7

*PBM Prods., Inc. v. Mead Johnson & Co.*,
No. 01-cv-199, 2001 WL 841047 (E.D. Va. Apr. 4, 2001) ....................................15

*Quesenberry v. Volvo Grp. N. Am., Inc.*,
No. 09-cv-00022, 2009 WL 648658 (W.D. Va. Mar. 10, 2009), *report and
recommendation adopted*, 2009 WL 1451690 (W.D. Va. May 21, 2009) ..............15

*Ricoh Co. v. Honeywell, Inc.*,
817 F. Supp. 473 (D.N.J. 1993) ............................................................................12

*Sierra Club v. Angelle*,
No. 19-cv-03263, 2019 WL 9899513 (N.D. Cal. Nov. 26, 2019) ..........................13

*Sierra Club v. National Marine Fisheries Serv.*,
No. 20-cv-3060, 2021 WL 4704842 (D. Md. May 24, 2021)...................................7

*Sierra Club v. National Marine Fisheries Serv.*,
No. 20-cv-3060, 2024 WL 3860211 (D. Md. Aug. 19, 2024)..................................3

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).................................................................................................5

*Stone & Webster, Inc. v. Georgia Power Co.*,
779 F.3d 614 (D.C. Cir. 2015) .............................................................................14

*Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
791 F.3d 436 (4th Cir. 2015) .................................................................................5

*Ute Indian Tribe of the Uintah & Ouray Rsrv. v. U.S. Dep't of Interior*,
560 F. Supp. 3d 247 (D.D.C. 2021)...................................................................13, 16

*Western Watersheds Project v. Tidwell*,
306 F. Supp. 3d 350 (D.D.C. 2017)......................................................................16

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.*,
922 F. Supp. 2d 51 (D.D.C. 2013) .........................................................................8

**TABLE OF AUTHORITIES—Continued**

Page

**STATUTES:**

16 U.S.C. § 1536(a)(2)......................................................................................................14

28 U.S.C. § 1391(e) .............................................................................................................7

28 U.S.C. § 1404(a) .........................................................................................................2, 5

**OTHER AUTHORITIES:**

*Connect With Us*, BSEE, https://www.bsee.gov/newsroom/connect-with-us (last
    visited Aug. 28, 2025)..................................................................................................14

*Contact Us*, BOEM, https://www.boem.gov/about-boem/contact-us (last visited
    Aug. 28, 2025) .............................................................................................................14

*Contact Us*, NOAA Fisheries, https://www.fisheries.noaa.gov/contact-us (last
    visited Aug. 28, 2025)..................................................................................................13

*Gulf Region*, BOEM, https://www.boem.gov/regions/gulf-america-region (last
    visited Aug. 28, 2025)............................................................................................10, 14

*Gulf Region*, BSEE, https://www.bsee.gov/who-we-are/our-organization/regional-
    offices/gulf-of-america (last visited Aug. 28, 2025).............................................10, 14

Nat'l Marine Fisheries Service, Endangered Species Act Section 7 Biological and
    Conference Opinion (May 20, 2025), *available at*
    https://www.fisheries.noaa.gov/s3//2025-05/BOEM-BSEE-Gulf-of-America-
    Oil-and-Gas-Program-BiOp-5.20.25.pdf ...........................................................3, 7, 10

15 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure
    § 3854 (4th ed. 2025 update) ............................................................................5, 6, 10

## TABLE OF EXHIBITS TO DECLARATION OF SEAN MAROTTA

| | |
|---|---|
| Ex. A | Complaint, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed May 20, 2025), ECF No. 1 |
| Ex. B | Scheduling Order, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed July 16, 2025), ECF No. 27 |
| Ex. C | Corrected AR Index, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed Aug. 6, 2025), ECF No. 31-1 |
| Ex. D | O'Brien Declaration, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed Aug. 11, 2025), ECF No. 33-4B |
| Ex. E | AR NMFS_0000000796, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La.) |

## INTRODUCTION

The American Petroleum Institute ("API"), EnerGeo Alliance ("EnterGeo"), National Ocean Industries Association ("NOIA"), and Chevron U.S.A. Inc. ("Chevron") (collectively, the "Intervenors") respectfully request that, in the interest of justice, the Court transfer this action to the Western District of Louisiana, where expedited summary judgment briefing is underway in a related case.

On May 20, 2025, the National Marine Fisheries Service ("NMFS") issued its Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America (the "2025 BiOp"). The 2025 BiOp evaluates the Federal Oil and Gas Program (the "Program") in the Gulf of America ("Gulf") under the Endangered Species Act ("ESA"). Plaintiffs filed this lawsuit hours after it was issued, challenging the 2025 BiOp as arbitrary and capricious under the Administrative Procedure Act ("APA"). The same day, the State of Louisiana, API, and Chevron challenged the 2025 BiOp under the APA in the Western District of Louisiana. *See* Marotta Decl., Ex. A, Compl., *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed May 20, 2025) ("*Louisiana* Compl."). Each lawsuit offers opposite and conflicting reasons as to why the 2025 BiOp is arbitrary and capricious. For example, Plaintiffs here claim that NMFS "arbitrarily and improperly underestimated the effect of vessel strikes on ESA-listed species," Amend. Compl., ECF No. 32 ¶ 159, whereas the Louisiana plaintiffs argue that NMFS arbitrarily overestimated the existence and number of strikes by Program vessels on Rice's whales by using "pessimistic assumptions that are not supported by the best scientific and commercial data available, are not reasonably certain to occur, and reflect speculation and surmise." Marotta Decl., Ex. A, *Louisiana* Compl. ¶¶ 70, 85.e.

The parties in the Louisiana action negotiated an expedited schedule, and summary judgment briefing in that case is presently underway with briefing on cross-motions for summary judgment scheduled to be completed by the end of October. *See* Marotta Decl., Ex. B,

Scheduling Order, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed July 16, 2025)
("*Louisiana* Scheduling Order").  In this case, meanwhile, the administrative record has not been
filed and a scheduling order has not been entered.

The Court has discretion to transfer a case to another district where it could have been
brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C.
§ 1404(a).  Transferring this action to the Western District of Louisiana is in the interest of
justice for multiple reasons.  First, transfer would promote efficiency by allowing the court in
which summary judgment briefing has already commenced to address both lawsuits rather than
requiring two courts to review the same voluminous administrative record.  Second, given the
conflicting legal arguments, transfer to the Western District of Louisiana avoids the possibility of
inconsistent outcomes between the two district courts in separate circuits.  And third, it is in the
interest of justice to have both cases heard in Western District of Louisiana because virtually
every aspect of this case centers around the Gulf and Gulf states: the 2025 BiOp evaluates
Program activities authorized by Bureau of Ocean Energy and Management ("BOEM") and the
Bureau of Safety and Environmental Enforcement ("BSEE") from their Louisiana offices; the
Program activities take place in the Gulf; the Program activities have a large impact on
Louisiana's economy; the species at issue reside in the Gulf; and even Plaintiffs' alleged interests
and claimed injuries relate to Gulf marine resources.  These strong ties to the Gulf outweigh the
Plaintiffs' rush to this courthouse.

Ultimately, the interest of justice is best served by having a single court—the one
geographically closer the people, industries, and natural resources impacted by the outcome of
judicial action—review the new administrative record and resolve conflicting claims regarding
the propriety of the 2025 BiOp.  This Court should grant the motion and transfer the case.

## BACKGROUND

On March 12, 2020, NMFS issued the 2020 BiOp. *See Sierra Club v. National Marine Fisheries Serv.*, No. 20-cv-3060, 2024 WL 3860211, at *2 (D. Md. Aug. 19, 2024); *see also* Nat'l Marine Fisheries Service, Endangered Species Act Section 7 Biological and Conference Opinion at 4 (May 20, 2025) ("2025 BiOp").[1] The 2020 BiOp was developed, in part, to address the impacts of the Program on ESA listed species following the Deepwater Horizon oil spill. *Sierra Club*, 2024 WL 3860211, at *2. The Court determined that the 2020 BiOp was arbitrary and capricious, vacated the BiOp effective December 20, 2024, and remanded the BiOp to NMFS for further consideration. *Id.* at *40. The Court subsequently amended its judgment to make vacatur effective as of May 21, 2025. *Sierra Club*, No. 20-cv-3060, ECF No. 220 (D. Md. Oct. 21, 2024).

On May 20, 2025, NMFS issued the 2025 BiOp. *See* 2025 BiOp at cover, 1. The 2025 BiOp "supersedes all previous section 7 consultations," including the 2020 BiOp. *Id.* at 16; *see id.* at 3 ("This reinitiated biological opinion replaces the 2020 opinion in its entirety."). The 2025 BiOp concludes that the Program is likely jeopardizing the continued existence of the Rice's whale (*id.* at 573–574) and includes a "reasonable and prudent alternative" that NMFS believes will avoid jeopardy to the Rice's whale (*id.* at 574–584), as well as an incidental take statement (*id.* at 584–596).

Two lawsuits challenged the 2025 BiOp the same day it was issued. Louisiana, API, and Chevron sued in the Western District of Louisiana to remand the 2025 BiOp to NMFS without vacatur. The Louisiana plaintiffs explained that the 2025 BiOp is arbitrary and capricious because (1) NMFS's jeopardy conclusion arbitrarily overestimates the number of Rice's whales

---

[1] *Available at* https://www.fisheries.noaa.gov/s3//2025-05/BOEM-BSEE-Gulf-of-America-Oil-and-Gas-Program-BiOp-5.20.25.pdf.

struck by Program vessels; (2) NMFS's reasonable and prudent alternative is premised on an erroneous jeopardy determination; (3) NMFS's incidental take statement arbitrarily overestimates take by employing the wrong legal standards; and (4) NMFS's terms and conditions in the incidental take statement are not permissible. *See* Marotta Decl., Ex. A, *Louisiana* Compl. ¶¶ 82–104. The Louisiana parties negotiated an expedited schedule for answering the complaint, producing the administrative record, and filing cross-motions for summary judgment. Under that schedule, NMFS filed the administrative record on July 14, 2025, and the Louisiana plaintiffs filed their motion for summary judgment on August 11. *See* Marotta Decl. ¶ 7. Summary judgment briefing is scheduled to conclude on October 27, 2025. Marotta Decl., Ex. B, *Louisiana* Scheduling Order.

A few hours before the Louisiana plaintiffs filed their case, Plaintiffs here challenged the 2025 BiOp in this Court by filing a placeholder complaint stating claims almost identical those asserted by Plaintiffs in their previous challenge to the 2020 BiOp. *See* ECF No. 1. The Government answered on July 28, 2025 (ECF No. 31), and Plaintiffs substantively amended their claims on August 1, 2025 (ECF No. 32). As amended, Plaintiffs' complaint alleges that (1) the 2025 BiOp's incidental take statement is arbitrary and capricious; (2) the 2025 BiOp's jeopardy analysis is flawed because it, among other things, underestimates the risk of vessel strikes on the Rice's whale; (3) the 2025 BiOp's oil-spill analysis is inadequate, and (4) the 2025 BiOp's reasonable and prudent alternative does not sufficiently avoid jeopardy. *See* Amend. Compl., ECF No. 32 ¶¶ 143–172. Plaintiffs seek vacatur of the 2025 BiOp. *Id.* at 39, Prayer for Relief.

The Intervenors promptly moved to intervene in July 2025, their motions were not opposed, and the Court granted intervention on August 20, 2025. *See* Order, ECF No. 37. The Court has not yet entered a briefing schedule and the administrative record has not yet been filed.

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). In exercising that discretion, courts in this Circuit first consider "whether the action could have been brought in the requested venue." *National Lab. Rels. Bd. Pro. Ass'n v. Federal Serv. Impasses Panel*, No. 20-cv-00078, 2020 WL 1638410, at *2 (D. Md. Apr. 2, 2020). If the action could have been brought in the transferee district, then the court weighs a variety of factors including "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (collecting cases).

"[I]t has long been clear that the interest of justice is a factor . . . to be considered on its own and that it is very important." 15 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 3854 (4th ed. 2025 update) ("Wright & Miller"). Indeed, courts often treat the interest of justice factor as "decisive—worthy of obeisance even when the other statutory factors of convenience of the parties and witnesses point in a different direction." *Id*. It "'encompass[es] all those factors bearing on transfer that are unrelated to the convenience of witnesses and parties.'" *Nat'l Lab. Rels. Bd. Pro. Ass'n*, 2020 WL 1638410, at *4 (quoting *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005)).

5

A key consideration in the interest-of-justice analysis is the "desire to avoid multiplicity of litigation resulting from a single transaction or event." Wright & Miller, *supra*, § 3854. As the Supreme Court has explained, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). The interest of justice thus includes the need to avoid duplicative litigation, the conservation of judicial resources, the comprehensive resolution of claims, and the need to avoid inconsistent results. *Nat'l Lab. Rels. Bd. Pro. Ass'n*, 2020 WL 1638410, at *4. Furthermore, courts recognize that the "administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute." Wright & Miller, *supra*, § 3854. As a result, "[w]hen the events occur in more than one district, a court can consider which jurisdiction has the stronger factual nexus to the claims." *Greene v. National Head Start Ass'n*, 610 F. Supp. 2d 72, 75 (D.D.C. 2009).

## ARGUMENT

The Court should transfer this action to the Western District of Louisiana. At the threshold, Plaintiffs' case could have been filed in Louisiana. Moreover, the interest of justice favors transfer. The Louisiana action has already progressed to summary judgment briefing while no scheduling order has been entered in this case. Allowing the Western District of Louisiana to adjudicate both cases will conserve judicial resources, particularly given the voluminous administrative record. Transfer will also reduce the likelihood of inconsistent outcomes. And it is especially appropriate for a court in the Gulf—the region at the epicenter of the 2025 BiOp—to hear both cases. The other transfer factors—including the Plaintiffs' dash to

the court to commence this action—do not factor heavily into this case and do not dictate a different result.

## I.    Venue Is Proper in the Western District of Louisiana.

As a threshold issue, this case could have been filed in the Western District of Louisiana in the first instance.  In an action against an officer of the United States, venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e).  Here, as the Court previously explained in addressing venue for the lone challenge to the 2020 BiOp, all of the Gulf states are appropriate venues for a challenge to the biological opinion because oil and gas operations can directly impact the "coastal waters in each transferee district and throughout the Gulf Coast."  *Sierra Club v. National Marine Fisheries Serv.*, No. 20-cv-3060, 2021 WL 4704842, at *4 (D. Md. May 24, 2021).

Plaintiffs confirm this Court's holding by asserting standing based on injuries to members who "use the public lands and waters throughout the Gulf, including those that would be affected by oil and gas activities."  Amend. Compl., ECF No. 32 ¶ 14; *see also id.* ¶¶ 15–19 (similar). The species at issue in the 2025 BiOp also reside in the Gulf.  *See* 2025 BiOp at 149–150 (listing species determined likely to be adversely affected); Amend. Compl., ECF No. 32 ¶¶ 2, 46–49. Plaintiffs' case thus pertains to activities specific to the Gulf and seeks to address harms specific to the Gulf, making venue appropriate in any district in the Gulf—including the Western District of Louisiana.  *See, e.g.*, *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 4 (D.D.C. 2013) (finding that case could have been brought in Massachusetts, in part, because "[m]any of the fishermen affected by the challenged regulations . . . are located in Massachusetts, and the fish themselves populate the waters off the Bay State's coast"); *see also Gulf Restoration Network v. NMFS*, No. 18-cv-01504 (M.D. Fla. dismissed July 19, 2019) (court asserted venue to oversee settlement that resulted in issuance of 2020 BiOp).

## II.    The Interest of Justice Favors Transfer to the Western District of Louisiana.

The interest of justice strongly favors transfer to Louisiana for three distinct reasons.

*First*, transfer to the Western District of Louisiana promotes judicial efficiency and avoids the "wastefulness of time, energy and money" that occurs when "two cases involving precisely the same issues are simultaneously pending in different District Courts." *Continental Grain Co.*, 364 U.S. at 26. Unlike the 2020 BiOp litigation, there is a pending Louisiana action challenging the 2025 BiOp that is already in the midst of summary judgment briefing. *See* Marotta Decl. ¶¶ 3, 7 & Ex. B, *Louisiana* Scheduling Order. Transfer will accordingly "allow[] for the conservation of judicial resources and the 'comprehensive disposition' of [the pendant] claims." *National Lab. Rels. Bd. Pro. Ass'n*, 2020 WL 1638410, at *4 (citation omitted). Transfer is especially appropriate to conserve judicial resources in this case because adjudication of this dispute and the Louisiana action will require judicial review of the same voluminous administrative record. That record has already been filed in the Western District of Louisiana and spans tens of thousands of pages. *See* Marotta Decl., Ex. C, Corrected AR Index, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La., filed Aug. 6, 2025) (indicating a Bates range of 107,608 pages).

Moreover, the Louisiana court is already familiar with a central issue in both cases—Program vessels potentially striking Rice's whales. *See Louisiana v. Haaland*, 23-cv-1157 (W.D. La. filed Aug. 24, 2023). There is no need to "unnecessarily squander judicial resources" adjudicating the lawfulness of the 2025 BiOp in two separate districts. *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F. Supp. 2d 51, 55 (D.D.C. 2013). Indeed, this Court recognized the wastefulness of hearing a case challenging an issue already being litigated in another forum when it transferred to the Eastern District of Louisiana a challenge brought by the Center for Biological Diversity—a plaintiff here—to NMFS's regulations authorizing the

incidental take of marine mammals associated with seismic exploration. *See NRDC v. Coit*, No. 21-cv-01827 (D. Md. filed July 22, 2021).

     *Second*, transfer is in the interest of justice because it avoids the possibility of "inconsistent outcomes" between the two district courts. *Hengle v. Curry*, No. 18-cv-100, 2018 WL 3016289, at *11 (E.D. Va. June 15, 2018) ("Allowing related cases to proceed simultaneously on separate tracks creates a 'prospect of inconsistent outcomes' that does not exist when the same court manages both cases." (citation omitted)). The mutually exclusive claims in this Court and in the Louisiana action make the risk particularly acute. The Plaintiffs in the Louisiana action contend that the 2025 BiOp *overestimates* the risk of vessel strikes and thereby imposes *unnecessary* mitigation. *See* Marotta Decl., Ex. A, *Louisiana* Compl. ¶¶ 70, 85.e. Plaintiffs in this action, by contrast, contend that the 2025 BiOp *underestimates* the risk of vessel strikes and therefore imposes *insufficient* mitigation. *E.g.*, Amend. Compl., ECF No. 32 ¶ 159. The "divergent interests of both sets of Plaintiffs" raises the "real possibility of conflicting opinions and rulings on the validity of the" 2025 BiOp, potentially subjecting the agencies to "conflicting court orders or injunctions." *Arizona & New Mexico Coal. of Cntys. for Econ. Growth v. U.S. Fish & Wildlife Serv.*, No. 15-cv-00125, 2015 WL 9917341, at *6 (D.N.M. Apr. 23, 2015); *see also National Lab. Rels. Bd. Pro. Ass'n*, 2020 WL 1638410, at *4 ("Transfer of similar claims to one jurisdiction is also in the interests of justice so as to avoid inconsistent results . . . ."). And the risk of inconsistent judgments is particularly harmful because "the two district court cases are in different circuits," meaning that there can be "conflicting circuit court opinions [that] could result as well, should the cases be appealed." *Arizona & New Mexico Coal.*, 2015 WL 9917341, at *6.

***Third***, transfer is in the interest of justice because Louisiana has far-more connection to the issues in this case. *See* Wright & Miller, *supra*, § 3854 ("[A]dministration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute."). The 2025 BiOp evaluates Program activities authorized by BOEM and BSEE from their Louisiana offices. *See* 2025 BiOp at 16 ("This consultation and opinion focus on the ongoing or future oil and gas-related program activity on the OCS in the Gulf of America authorized by either BOEM or BSEE.); *Gulf Region*, BOEM, https://www.boem.gov/regions/gulf-america-region (last visited Aug. 28, 2025) (listing Louisiana office for Gulf program management); *Gulf Region*, BSEE, https://www.bsee.gov/who-we-are/our-organization/regional-offices/gulf-of-america (last visited Aug. 28, 2025) (listing Louisiana office for Gulf program management). The Program activities take place in the Gulf. *E.g.*, 2025 BiOp at 9 ("[T]his opinion . . . analyzes the effects of all on-going and future oil and gas activities related to leases awarded through 2029 on ESA-listed . . . species and designated and proposed critical habitat in the entire Gulf of America."); *id.* at 16 ("This consultation and opinion focus on the ongoing or future oil and gas-related program activity on the OCS in the Gulf of America authorized by either BOEM or BSEE."). The species at issue, including the Rice's whale, reside in the Gulf. *See* 2025 BiOp at 149–150 (listing species likely to be adversely affected); Amend. Compl., ECF No. 32 ¶¶ 2, 46–49; *see Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 113 (D.D.C. 2015) (transferring case to Alaska and explaining that "[t]here are no Pacific walruses in Washington, D.C.—not even at the National Zoo."). The relief sought by Plaintiffs here—vacatur of the 2025 BiOp—would have substantial economic consequences for the State of Louisiana and its residents. *See* Marotta Decl., Ex. D, O'Brien Declaration, *State of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La.,

filed Aug. 11, 2025) (detailing Louisiana's economic interest in disbursements from oil and gas

production in the Gulf). And even Plaintiffs' alleged interests and claimed injuries relate to Gulf

marine resources. *See* Amend. Compl., ECF No. 32 ¶¶ 14–21. This Court's rationale in 2021

when transferring a challenge to NMFS actions to Louisiana remains true today: Louisiana "has

more connections to the facts and challenged actions at issue in this case than the District of

Maryland" because "plaintiffs allege injuries involving a species of whale that is present off the

coast of Louisiana." Transfer Order at 5, *NRDC v. Coit*, No. 21-cv-01827 (D. Md. Apr. 21,

2022), ECF No. 96. The administration of justice is best served by a Louisiana court

determining the lawfulness of Louisiana actions affecting Louisiana marine resources that will

impact Louisiana's economy.

This suit's connection to this District is much more attenuated. *Greene*, 610 F. Supp. 2d

at 75 ("When the events occur in more than one district, a court can consider which jurisdiction

has the stronger factual nexus to the claims."). None of the Plaintiffs resides in this District—

Sierra Club resides in Oakland, California; the Center for Biological Diversity resides in Tuscon,

Arizona; Friends of the Earth resides in Washington, D.C.; Turtle Island Restoration Network

resides in Olema, California; and the Natural Resources Defense Council resides in New York,

New York. *See* Amend. Compl., ECF No. 32 at 1 (caption listing addresses). The only link this

case has to this District is that NMFS is headquartered here. But that is not a basis to deny

transfer because this is an administrative-record case and does not require the presence of agency

officials.

Simply put, the Western District of Louisiana "has the stronger factual nexus to the

claims" at issue in this case. *Greene*, 610 F. Supp. 2d at 75.[2] That is perhaps why all recent

---

[2] To be sure, this Court previously reviewed the 2020 BiOp. But the 2025 BiOp is a new agency

litigation regarding the interaction between the Program and protected marine species—except the recent 2020 BiOp litigation—has been heard in districts on the Gulf.[3]  This case should be no different.

## III.    No Other Factor Counsels Against Transfer.

Courts considering a motion to transfer also consider private factors, such as a plaintiff's choice of forum, the convenience of the parties and witnesses, and the ease of access to evidence. But none of those factors can overcome the interest-of-justice factors discussed above. Plaintiffs' choice of forum should be accorded little weight because almost every aspect of this case occurs in the Gulf.  That Plaintiffs filed this lawsuit mere hours before the Louisiana action is of no consequence.  And the other factors—the convenience of the parties and witnesses, or the ease of access to evidence—are of little relevance in this record-bound APA challenge.

**1.**  Courts typically give less weight to a plaintiff's choice of forum "'[w]hen the central facts of a lawsuit occur outside the forum state.'"  *Capella Photonics, Inc. v. Ciena Corp.*, No. 20-cv-702, 2020 WL 7043848, at *4 (D. Md. Dec. 1, 2020) (brackets in original) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J. 1993)).  Here, virtually every aspect of this

---

action and must be evaluated on its own administrative record.  Judicial efficiency is best served by transfer of the case to the Western District of Louisiana so that a single judge may review this new record against the new biological opinion.

[3] *See Gulf Restoration Network v. NMFS*, No. 18-cv-01504 (M.D. Fla. dismissed July 19, 2019) (settlement resulted in issuance of 2020 BiOp); *NRDC v. U.S. Dep't of the Interior*, No. 10-cv-01882 (E.D. La. dismissed June 3, 2021) (production of 2020 BiOp was an element of settlement related to impacts of seismic exploration on marine mammals); *API v. Raimondo*, No. 21-cv-905 (E.D. La. filed May 5, 2021) (industry challenge to overly conservative assumptions in regulations to protect marine mammals from seismic exploration); *NRDC v. Coit*, No. 22-cv-1117 (E.D. La. received in-transfer April 25, 2022) (eNGO challenge to regulations to protect marine mammals from seismic exploration, originally filed in D. Md., and dismissed following transfer to E.D. La.); *Louisiana v. Haaland*, No. 23-cv-1157 (W.D. La. filed Aug. 24, 2023) (successful challenge to unlawful measures added to Lease Sale 261 purportedly to protect the Rice's whale); *Sierra Club v. NMFS*, No. 20-cv-3060 (D. Md. filed Oct. 21, 2020) (summary judgment granted, 2020 BiOp ordered vacated as of May 21, 2025).

case—from the species impacted to the regulated activities—relates to and occurs by the Gulf. Plaintiffs' choice of forum therefore is entitled to little weight in this Court's transfer analysis. *See Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*, 358 F. Supp. 3d 1, 10 (D.D.C. 2019) (less deference afforded to plaintiff's choice of venue where "substantial part of the events giving rise to the [plaintiff's] claims occurred elsewhere"); *Sierra Club v. Angelle*, No. 19-cv-03263, 2019 WL 9899513, at *3 (N.D. Cal. Nov. 26, 2019) (transferring challenge to oil and gas safety rules to Louisiana where "the challenged administrative process occurred substantially in BSEE's Gulf of Mexico Region office in the Eastern District of Louisiana" and oil and gas activities on the OCS "are a substantial part of the Gulf states' economy"). Furthermore, Plaintiffs' alleged injuries, and the natural resources they seek to protect, occur outside of the District of Maryland. These circumstances, too, counsel in favor of giving Plaintiffs' forum choice little weight. *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. U.S. Dep't of Interior*, 560 F. Supp. 3d 247, 267 (D.D.C. 2021) ("First, although a plaintiff's choice is ordinarily given some deference, much less is due here because the Tribe, its alleged injuries, and the natural resource at issue are all substantially (indeed, nearly exclusively) connected to the proposed transferee district—Utah.").

Although courts in APA cases "'generally focus on where the decisionmaking process occurred to determine where the claims arose[,]'" "where the decision-making process was diffuse courts have found this factor to be neutral." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015) (citation omitted) (collecting cases). In this case, decision-making was spread across three regions: NMFS headquarters in Maryland, various agency offices in D.C., and the Gulf. *See Contact Us*, NOAA Fisheries, https://www.fisheries.noaa.gov/contact-us (last visited Aug. 28, 2025). NMFS staff were located

13

in this District, but the person tasked by the statute with making the ultimate decision—the

Secretary—resides in D.C.  *See* 16 U.S.C. § 1536(a)(2).  Moreover, meetings between NMFS

and the applicants took place in D.C. (*e.g.*, Marotta Decl., Ex. E, AR NMFS_0000000796, *State*

*of Louisiana v. NMFS*, No. 25-cv-00691 (W.D. La.)), and BOEM and BSEE—who form the

other half of the consortium that produced the 2025 BiOp—maintain offices in D.C.  *See Contact*

*Us*, BOEM, https://www.boem.gov/about-boem/contact-us (last visited Aug. 28, 2025); *Connect*

*With Us*, BSEE, https://www.bsee.gov/newsroom/connect-with-us (last visited Aug. 28, 2025).

Substantial work by BOEM and BSEE—including additional meetings with applicants—took

place in the Gulf, where those agencies regulate the Program on a day-to-day basis.  *E.g.*, *Gulf*

*Region*, BOEM, *supra* (listing Louisiana office for Gulf program management); *Gulf Region*,

BSEE, *supra* (listing Louisiana office for Gulf program management).  The locus of

decisionmaking in this case is not so focused in Maryland as to outweigh the factors pointing to a

Louisiana forum.

**2.**  Nor is Plaintiffs' forum choice entitled to meaningful weight simply because Plaintiffs

won the race to the courthouse by a few hours.[4]  Courts considering whether to apply the so-

called first-to-file rule carefully consider "the chronology of events."  *Choice Hotels Int'l, Inc. v.*

*Jai Sai Baba LLC*, No. 23-cv-146, 2023 WL 5509211, at *4 (D. Md. Aug. 25, 2023).  And where

the competing lawsuits are filed very close in time, courts have given little significance to the

fact that one was filed slightly before the other.  *E.g.*, *Stone & Webster, Inc. v. Georgia Power*

*Co.*, 779 F.3d 614, 618 (D.C. Cir. 2015); *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*,

20 F. Supp. 2d 948, 955 (E.D. Va. 1998) (holding that the first-to-file rule did not apply when the

---

[4] The two cases were filed the same day.  *Compare* Compl., ECF No. 1, *with* Marotta Decl., Ex.
A, *Louisiana* Compl.

second action was filed two weeks after the first action). Moreover, "district courts in the Fourth Circuit have often looked to whether circumstances suggest a race to the courthouse" that would undermine the first-filed rule. *See, e.g.*, *Quesenberry v. Volvo Grp. N. Am., Inc.*, No. 09-cv-00022, 2009 WL 648658, at *4 (W.D. Va. Mar. 10, 2009), *report and recommendation adopted*, 2009 WL 1451690 (W.D. Va. May 21, 2009); *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003); *PBM Prods., Inc. v. Mead Johnson & Co.*, No. 01-cv-199, 2001 WL 841047, at *2 (E.D. Va. Apr. 4, 2001). And courts consider how far each case has progressed. *See Quesenberry*, 2009 WL 648659, at *4 ("[T]he plaintiffs' argument that the first-to-file rule need not be applied when the first-filed case is no further developed than one subsequently filed is well-taken.").

Plaintiffs here raced to the courthouse by filing their initial complaint almost immediately upon the 2025 BiOp's release—a complaint that had to be substantially revised months later after Plaintiffs actually reviewed the decision they were challenging. *Compare* Compl., ECF No. 1, *with* Amend. Compl., ECF No. 32. Moreover, after rushing to file their initial complaint, Plaintiffs did not advance their case until the Court requested a briefing-schedule proposal. *See* Order re Scheduling (Aug. 21, 2025), ECF No. 38. Meanwhile, the Louisiana plaintiffs filed suit the same day as Plaintiffs and immediately negotiated an expedited schedule to address their claims. *See* Marotta Decl., Ex. B, *Louisiana* Scheduling Order. The Louisiana case has as a result progressed much faster than this case, with summary-judgment briefing well underway. *Id*. The cases' chronology does not warrant application of the first-to-file rule.

Even if it did, however, the first-to-file rule is discretionary. *See Elderberry of Weber City, LLC v. Living Centers-Se., Inc.*, No. 12-cv-00052, 2013 WL 1164835, at *4–5 (W.D. Va. Mar. 20, 2013) (noting the decision to apply the rule is made on a "discretionary basis" and the

rule is "not absolute and 'is not to be mechanically applied'" (citations omitted)).  And courts

will still transfer a first-filed case when the interest of justice dictates.  *See Choice Hotels*, 2023

WL 5509211, at \*4; *Capitol Payment Sys., Inc. v. Di Donato*, No. 16-cv-882, 2017 WL 2242678,

at \*14 (D. Md. May 23, 2017) (transferring case for the interest of justice even though first-to-

file rule applied).

      **3.**  Finally, the other convenience factors are, at best, marginally relevant in this case.

"There is no need to consider the convenience and accessibility of witnesses and sources of proof

because," in an APA case like this one, "there will be no witnesses or 'sources' of proof."

*Arizona & New Mexico Coal.*, 2015 WL 9917341, at \*7.  Thus, "access to witnesses and proof

have little relevan[ce] here, because the . . . claims will be litigated on the basis of an

administrative record as required by the APA."  *Ute Indian Tribe of the Uintah & Ouray Rsrv.*,

560 F. Supp. 3d at 267.  The location of the record is also largely irrelevant because the record is

compiled by the agencies, produced to the parties electronically, and has already been filed in the

Louisiana action.  *See* Marotta Decl. ¶¶ 4, 7 & Ex. C.  In short, "given the primary importance of

the administrative record in cases such as this one, factors such as the convenience of the

witnesses or the ease of access to sources of proof typically do not sway the transfer inquiry in

either direction."  *Western Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 360 (D.D.C.

2017).  The Court should give dispositive weight to the interest-of-justice factors and transfer

Plaintiffs' case to Louisiana.

## CONCLUSION

For the forgoing reasons, the Court should grant the motion and transfer this case to the Western District of Louisiana.

Respectfully submitted,

/s/ Dana A. Raphael

Nathan C. Brunette, Bar No. 0612120104
Stoel Rives LLP
Portland, OR 97205
(503) 294-9678
nathan.brunette@stoel.com

Ryan P. Steen (*pro hac vice*)
Jason T. Morgan (*pro hac vice*)
Tiffany Wang (*pro hac vice*)
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900
ryan.steen@stoel.com
jason.morgan@stoel.com
tiffany.wang@stoel.com

*Counsel for American Petroleum Institute,
EnerGeo Alliance, and National Ocean
Industries Association*

Dated: August 28, 2025

Sean Marotta (*pro hac vice*)
Dana A. Raphael (D. Md. Bar No. 30434)
Hogan Lovells US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
(202) 637-5600
dana.raphael@hoganlovells.com
sean.marotta@hoganlovells.com

Sarah C. Bordelon (*pro hac vice* pending)
Holland & Hart LLP
5470 Kietzke Lane, Suite 100
Reno, NV 89511
(775) 327-3000
scbordelon@hollandhart.com

*Counsel for Chevron U.S.A. Inc.*

17