ADAM R.F. GUSTAFSON, Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE, Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Acting Assistant Section Chief
DAVIS A. BACKER, Trial Attorney (CO Bar No. 53502)
SARA M. WARREN, Trial Attorney (GA Bar No. 966948)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Tel: (202) 305-5469 (Backer)
Tel: (202) 598-5785 (Warren)
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov
Email: sara.warren@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SIERRA CLUB et al., | |
| *Plaintiffs,* | No. 8:25-cv-01627-DLB |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE et al., | **FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** |
| *Federal Defendants,* | |
| CHEVRON U.S.A. INC. | |
| *Intervenor-Defendant,* | |
| and | |
| AMERICAN PETROLEUM INSTITUTE et al., | |
| *Intervenor-Defendants.* | |

**<u>INTRODUCTION</u>**

Plaintiffs challenge two Endangered Species Act ("ESA") decision documents that the National Marine Fisheries Service ("NMFS") issued because, at the time, the agency action that NMFS evaluated in those decisions was subject to the ESA's requirements. Plaintiffs ask this Court to declare those decisions unlawful, vacate both, remand them to NMFS with instructions to prepare new decisions within six months, and retain jurisdiction until NMFS returns to compliance with the ESA.

But things have changed. The agency action that NMFS evaluated in these decisions— the Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's oil and gas program activities in the Gulf of America—is no longer subject to the ESA. The Secretary of War determined that it was necessary for reasons of national security to exempt those activities from the requirements of ESA Section 7(a)(2). On March 31, 2026, the Endangered Species Committee convened and unanimously granted that exemption. The Committee's order expressly covers the same agency action analyzed in the decisions (NMFS' 2025 biological opinion and incidental take statement) that Plaintiffs challenge here. The order further provides that the covered activities include the avoidance or minimization measures described in NMFS's 2025 biological opinion. All said, BOEM and BSEE's oil and gas activities in the Gulf are no longer subject to Section 7(a)(2)'s consultation, jeopardy, or adverse-modification mandates, and any activity that otherwise would constitute take is no longer prohibited under the ESA.

The Committee's exemption order leaves no live controversy for this Court to resolve. NMFS issued the challenged BiOp and ITS pursuant to ESA Section 7. Both documents exist to implement the procedural and substantive duties that Section 7 imposes on the action agencies and

1

on NMFS as the consulting agency. But now, the Committee's exemption eliminates the statutory predicate on which the challenged consultation rests and alters the governing legal framework itself. When Section 7's mandates no longer apply, the BiOp ceases to have any legal force or effect. There is, in short, nothing left for this Court to review.

As a consequence, whatever disputes Plaintiffs may have had with the adequacy of NMFS' 2025 consultation, resolution of those disputes can have no continuing, real-world effect. Vacating or remanding ESA consultation decisions would not affect the underlying activities, as those actions are no longer subject to the ESA. This case is therefore moot and must be dismissed for lack of subject-matter jurisdiction. Because no effective judicial relief remains available, Article III requires dismissal.

## **BACKGROUND**

I.    **Endangered Species Act**

Section 7 of the ESA requires that each federal agency "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [protected species' critical] habitat." 16 U.S.C. § 1536(a)(2). To carry out this mandate, the federal agency must consult with the Fish and Wildlife Service ("FWS") and/or NMFS whenever a proposed action may affect a listed species or its critical habitat. *Id.* § 1536(a)(2)–(3); 50 C.F.R. § 402.14(a).

Consultation can be either informal or formal. 50 C.F.R. §§ 402.13-402.14. Formal consultation culminates in the issuance of a "biological opinion," in which the consulting agency (NMFS or FWS) examines the proposed action's anticipated effects on listed species and critical habitat and opines on whether the action is likely to jeopardize the species' continued existence

or adversely modify its critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(h). If the consulting agency issues a "jeopardy" finding, the BiOp must identify "reasonable and prudent alternatives" to the proposed action, if any exist. 50 C.F.R. § 402.14(h)(1)(iv)(A), (h)(2).

Even where the proposed action is not likely to jeopardize a species, it may cause "incidental take." *Id.* § 402.02 (defining "incidental take" as "takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or applicant"). In such cases, the consulting agency issues an ITS specifying the extent of anticipated take, identifying "reasonable and prudent measures" to minimize impact, and setting forth terms and conditions for their implementation. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i). Compliance with the ITS provides a safe harbor from civil and criminal liability for incidental take. 16 U.S.C. § 1536(o)(2).

## II.    NMFS' 2025 BiOp and Present Litigation

NMFS' 2025 BiOp and ITS are, in part, in response to this Court's 2024 summary judgment order and opinion in which it found NMFS' prior BiOp—the 2020 BiOp—deficient in various ways. The Court ultimately remanded the 2020 BiOp to NMFS and deferred vacatur until May 21, 2025. *See generally Sierra Club I*, 797 F. Supp. 3d 440 (D. Md. 2024), *amended*, 2024 WL 6817999 (D. Md. Oct. 21, 2024). Following the Cout's 2024 order and opinion, NMFS and the Bureaus took their obligations on remand seriously. They were committed to addressing the various concerns that had been raised during the prior litigation, and NMFS worked with the Bureaus and others to ensure the reinitiated consultation was comprehensive, grounded in the best available science, and responsive to the Court's findings. That is, NMFS took the necessary time to distill updated information the Bureaus provided, to incorporate the best available

science, and to generate a new BiOp that replaced the 2020 BiOp in its entirety. The 2025 BiOp accounted for and incorporated this information while addressing problems this Court identified.

On May 20, 2025, within hours of NMFS issuing the new BiOp, two lawsuits were filed challenging the opinion—the first in the present litigation, and the second in the Western District of Louisiana led by the State of Louisiana, American Petroleum Institute, and Chevron USA, Inc. *See State of Louisiana et al. v. NMFS et al.*, No. 2:25-cv-691-JDC-TPL (W.D. La.). As relevant here, Plaintiffs allege that NMFS' jeopardy analysis, its reasonable and prudent alternative, and its ITS are arbitrary and capricious. In short, they assert that the 2025 BiOp and ITS repeat many of the same errors identified previously.

## III.    The Endangered Species Committee

Congress recognized that there are circumstances where agency actions should be exempt from the ESA. It thus created the Committee and gave it authority to grant blanket exemptions from the requirements of the ESA for any agency action. *See id.* § 1536(e), (h). The Committee consists of six permanent members: the Secretary of the Interior (who serves as chair), the Secretary of Agriculture, the Secretary of the Army, the Chairman of the Council of Economic Advisors, the Administrator of the Environmental Protection Agency, and the Administrator of the National Oceanic and Atmospheric Administration. *Id.* § 1536(e)(3)(A)–(F). The ESA provides that "[n]otwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j).

When the Committee grants an exemption, the agency action is exempt from the procedural consultation requirements of ESA Section 7 and the substantive duty to avoid jeopardy and adverse modification of critical habitat no longer apply to the action, and the ESA's

take prohibitions no longer apply to activity necessary to carry out the action. *See* 16 U.S.C. § 1536(a)(2), (o)(1).

## IV.   The Committee's Exemption

On March 13, 2026, the Secretary of War notified the Secretary of the Interior that the Secretary of War found it necessary for reasons of national security to exempt from the ESA's requirements all Gulf of America oil and gas exploration and development activities associated with the Bureaus' Outer Continental Shelf Oil and Gas Program—specifically, as relevant here, the action reviewed in the 2025 BiOp. *See* Order at 16966. On March 31, 2026, the Committee convened and granted the exemption for the oil and gas program, based on the Secretary of War's national security finding. Order at 16966-67.

**STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Because Article III limits federal jurisdiction to live cases and controversies, mootness is jurisdictional and must be addressed whenever it arises. *See United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018). A motion to dismiss on mootness grounds is therefore properly brought under Federal Rule of Civil Procedure 12(b)(1), and Rule 12(h)(3) independently requires dismissal "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

Where, as here, mootness turns on events occurring after the filing of the complaint, the Court may consider materials outside the pleadings without converting the motion into one for summary judgment. *Kerns*, 585 F.3d at 192.

5

## ARGUMENT

**I.      The Court lacks subject-matter jurisdiction because the Endangered Species Committee's exemption has mooted Plaintiffs' claims.**

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction[.]" *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citations omitted). Article III extends only to actual cases or controversies, and when a case or controversy ceases to exist, so too does the Court's subject-matter jurisdiction. *Id*. "If an event occurs during the pendency of [a case] that makes it impossible for a court to grant effective relief to a prevailing party, then the [case] must be dismissed as moot." *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021) (quoting *Int'l Bhd. of Teamsters, Local 639 v. Airgas, Inc.*, 885 F.3d 230, 235 (4th Cir. 2018)). And where a change in law or other intervening event supersedes the legal regime challenged in the complaint, the case becomes moot because any judicial ruling would have no "practical effect on the outcome of the matter." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010) (citation omitted); *see also Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (same).

This is precisely what has happened here. Plaintiffs challenge agency decisions that no longer have any force or effect, and they rely on violations of a statute—the ESA—that no longer applies to the underlying action. Instead, their claims are directed specifically at NMFS' 2025 consultation under ESA Section 7, including the BiOp and ITS. Plaintiffs ask the Court to declare NMFS' 2025 BiOp and ITS unlawful, vacate them, remand them to NMFS to produce a new BiOp within six months, and maintain jurisdiction until NMFS comes into compliance with the ESA. But the Committee's Order fundamentally altered the legal framework governing the underlying agency action: it exempted the covered oil and gas activities from the requirements of ESA Section 7, and now BOEM and BSEE no longer need a BiOp and ITS from NMFS to authorize these activities.

6

The Supreme Court has made clear that mootness is attributable to intervening events that "change the legal framework governing the case." *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 339 (2020) (per curiam); *see also Holloway v. City of Virginia Beach*, 42 F.4th 266, 273 (4th Cir. 2022) (holding that "statutory changes that discontinue a challenged practice" ordinarily moot a case, and that when a challenged legal regime is "superseded by a significantly amended statutory scheme," claims directed at the prior regime become moot) (citations omitted). The same conclusion follows from persuasive out-of-circuit authority addressing comparable intervening changes to the governing legal regime. *See, e.g.*, *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1226–27 (D.C. Cir. 2021) (holding challenge to a rule prohibiting road construction on National Forest System lands became moot when agency issued an exemption to the rule as applied to the Forest System land at issue); *Kasza v. Browner*, 133 F.3d 1159, 1168–69 (9th Cir. 1998) (holding that challenge to statutory compliance obligations became moot when the President issued a national-security exemption covering the same conduct). The Committee's exemption Order has fundamentally changed the governing legal framework. Before March 31, 2026, the Bureaus' oil and gas program was governed, for ESA Section 7 purposes, by NMFS' 2025 BiOp and ITS. After March 31, 2026, however, those same activities are now governed by the Committee's exemption Order, which renders Section 7(a)(2)'s consultation, jeopardy, and adverse-modification requirements no longer applicable to the covered agency action and removes the ESA take prohibition for activities necessary to carry out that action. *See* Order at 16966-67.

Because the governing legal framework has changed, this Court can no longer grant effective relief on Plaintiffs' claims. Vacating the 2025 BiOp and ITS would not alter the framework now governing the covered Gulf activities. Nor would a remand directing NMFS to reinitiate consultation have any operative effect because the Committee's Order makes Section 7

consultation unnecessary for the exempted activities. *Id*. To the extent any avoidance or minimization measures described as part of the Bureaus' proposed action in the 2025 BiOp continue to be implemented, they do so because the Committee's Order expressly incorporates them—not because NMFS' 2025 consultation remains independently operative.

The same is true of the ITS. Under ordinary circumstances, the ITS matters because it provides a statutory safe harbor for take that occurs in compliance with its terms and conditions. *See* 16 U.S.C. § 1536(o)(2). But the Committee's Order now provides that, for the covered activities, "any action that would ordinarily be considered a take shall not be prohibited" under the ESA. Order at 16966. As the Order takes effect for the full scope and duration of the covered activities, the ITS ceased as the source of take coverage. The Section 7(a)(2) no longer applies to the covered agency action. So, a judicial decision on the legality of the BiOp or ITS—which are the product of consultation under Section 7—would have no practical effect. The BiOp and ITS have no legal effect.

Plaintiffs' request for declaratory and injunctive relief fares no better. A declaratory judgment must redress a live dispute; it is not an end in itself. *See Wells v. Johnson*, 150 F.4th 289, 301 (4th Cir. 2025) (noting that a declaratory judgment must affect the rights of litigants in the case and if it does not—if it comes with no future consequences—then declaratory judgment becomes synonymous with an advisory opinion). Here, a declaration that NMFS violated Section 7 in issuing the 2025 BiOP and ITS would have no practical effect on the operation of the covered activities given the scope and effect of the Committee's exemption. As the court in *Holloway* explained, once an intervening legal change displaces any possible relief previously available, "the only thing a court can add now is an advisory opinion as to the legal status of an effectively defunct" regime. 42 F.4th at 275 (citation omitted). Article III does not permit that.

Nor can Plaintiffs avoid mootness by speculating about challenges to the Committee's exemption itself. The Fourth Circuit has rejected the notion that a "residual claim" against a new legal regime preserves a challenge to the old one. *Id.* at 274. If Plaintiffs believe that the Committee's Order is unlawful, Congress has identified the forum and procedure for that challenge: direct review in the court of appeals within ninety days of the Committee's decision. *See* 16 U.S.C. § 1536(n); *see also* Order at 16966-67. Although some of the named Plaintiffs here are challenging the exemption, that cannot keep alive *this* case, which is directed only at an ESA consultation that no longer governs the covered agency action.

Accordingly, Plaintiffs' claims are moot and must be dismissed for lack of subject-matter jurisdiction.

## II.      No exception to mootness applies.

Courts recognize two exceptions to mootness: (1) when a litigant voluntarily ceases the challenged conduct to avoid judicial review; and (2) when the challenged action is capable of repetition but evades review. *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). Neither exception applies here.

### A.      This case does not fall within the voluntary-cessation exception.

The voluntary-cessation doctrine prevents a defendant from mooting a case by strategically discontinuing challenged conduct while retaining the ability to resume it after the lawsuit is dismissed. *Porter*, 852 F.3d at 364–65. But that doctrine has no application where, as here, mootness is caused not by the defendant's own voluntary conduct, but by an intervening event ordered by a different governmental actor exercising independent authority.

*Holloway* is instructive. There, the Fourth Circuit held that the voluntary-cessation doctrine did not apply because "the City did not voluntarily cease anything"; instead, the General Assembly

acted to change the governing regime. 42 F.4th at 276-77 (citation omitted). The court refused to impute the legislature's action to the defendant city and further emphasized that the city lacked the power to unilaterally restore the old regime. *Id.*

The same reasoning holds true here. NMFS did not withdraw its 2025 BiOp, revise its ITS, or otherwise "voluntarily cease" the conduct Plaintiffs challenge. Rather, the Secretary of War made a national-security finding under 16 U.S.C. § 1536(j), and the Committee—an independent body Congress established by statute—then granted an exemption under Section 7(h). That is what moots this case. And as the court noted in *Alaska*, 'the "voluntary cessation" exception to mootness has no play' when the agency did not act 'in order to avoid litigation.'" 17 F.4th at 1229 (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011)). NMFS lacks unilateral authority to return to a traditional Section 7 regime. NMFS cannot on its own reimpose Section 7(a)(2)'s consultation obligations for agency action that the Committee has exempted, nor can it nullify the exemption Order. Because mootness here does not arise from NMFS' own voluntary cessation and because NMFS lacks the unilateral authority to return to the pre-exemption regime, the voluntary-cessation exception is inapplicable.

## B.    This case is not capable of repetition yet evading review.

The capable-of-repetition-yet-evading-review exception is "narrow" and applies only where the challenged action is (i) too short in duration to be fully litigated before it ceases; and (ii) there is a reasonable expectation that the same complaining party will again be subjected to the same action. *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007).

Neither requirement is met here. The challenged actions—NMFS' 2025 BiOp and ITS—are not inherently too short-lived to be reviewed. Plaintiffs litigated a nearly identical challenge to NMFS' 2020 BiOp for nearly four years, and this suit itself could have been fully litigated but the

10

Committee's exemption Order intervened. This case is moot because the governing law changed, not because the 2025 BiOp—which was projected to cover a 45-year span—was too short to review.

Nor is there any reasonable expectation that these same Plaintiffs will again be subjected to the same allegedly unlawful Section 7 consultation regime for these same agency actions. The Committee's Order applies to the full scope and duration of the Bureaus' need to comply with the ESA for oil and gas activities authorized in the Gulf of America. *See* Order at 16966. Any future dispute would concern a different legal framework, challenging whether the exemption Order itself is valid or how it applies, rather than a challenge to the adequacy of a future BiOp or ITS.

In short, Plaintiffs' claims are constitutionally moot and neither of the two recognized exceptions to mootness apply to preserve the Court's jurisdiction.

## **CONCLUSION**

This case no longer presents a live Article III controversy. The Committee has exempted the very oil and gas program activities analyzed under NMFS' 2025 BiOp and ITS, which Plaintiffs challenge. Because the Court can no longer grant effective relief, Plaintiffs' complaint is moot and must be dismissed for lack of subject-matter jurisdiction. Accordingly, Federal Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' Amended Complaint, ECF No. 32, in its entirety.

Dated: April 23, 2026                    Respectfully submitted,

                                         ADAM R.F. GUSTAFSON,
                                         Principal Deputy Assistant Attorney General
                                         BRADLEY CRAIGMYLE,
                                         Deputy Assistant Attorney General
                                         MEREDITH L. FLAX, Deputy Section Chief
                                         MICHAEL R. EITEL, Acting Assistant Section Chief

/s/ Davis A. Backer
DAVIS A. BACKER, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, Colorado 80202
Tel: (202) 305-5469
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov

SARA M. WARREN, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-5785
Fax: (202) 305-0275
Email: sara.warren@usdoj.gov

**Attorneys for Federal Defendants**

12